cause not in writing; that, if they did amount to such a contract, it was void for lack of consideration; and that the defendants were not estopped to plead the statute because both parties were equally well informed of all the facts. Miller and Field, JJ., dissented, on the ground that the acts and promises of the government officials amounted to an estoppel in equity to the plea of the statute of limitations. Andreae v. Redfield, 98 U. S. 225.]

## Case No. 369.

### In re ANDREWS.

[1 Hask. 87.][1]

District Court, D. Maine.    Feb., 1867.

ARMY—ENLISTMENT OF MINOR—DISCHARGE ON REQUEST OF PARENT OR GUARDIAN.

A minor, who has enlisted in the army of the United States without the consent of his parent or guardian, must be discharged on request of his father.

[See, also, U. S. v. Wright, Case No. 16,777.]

Habeas corpus. A father asks the discharge of his minor son from an enlistment in the army, made without the father's consent.

Nathan Webb and Thomas Amory Deblois, for petitioner.

FOX, District Judge. The act of [March 16] 1802 [section 11, 2 Stat. 134] provided that no person under the age of twenty-one should be enlisted by any officer without the consent of his parent, guardian, or master, first had or obtained. The same provision is found in the act of 1813; but by act of [December 10] 1814, c. 10, §§ 1, 2, [3 Stat. 146,] the enlistment of men between the ages of eighteen and fifty was authorized; and it further provided, that such enlistment should be absolute and binding upon all parties under the age of twenty-one years; but any recruit might at any time within four days from his enlistment, reconsider and withdraw his enlistment. The third section repealed so much of the fifth section, of the act of [January 13] 1813 [3 Stat. 791, c. 12] as required the consent of the parent to the minor's enlistment. By act of [March 3] 1815, [3 Stat. 224,] entitled "an act fixing the military peace establishment of the United States," it was provided that the men should be recruited in the same manner, and with the same limitations, as are authorized by act of 1802. This revived the provision of the act of 1802, and restored the requirement of the consent of the parent to the enlistment of the minor. The act of 1814, I consider repealed, and the provision of the act of 1802 in this respect revived. The act of September 28, 1850, [section 5, 9 Stat. 507,] makes it the duty of the secretary of war to order the discharge of any soldier of the army, who at the time of his enlistment was under the age of twenty-one years,

upon evidence being produced to him that such enlistment was without the consent of his parent or guardian. I consider this as only affording a more speedy redress to the parent, and conferring on the secretary of war the power, or rather charging him with the duty, of granting a discharge in such a case. Before this, it might be necessary to apply to the courts for a discharge, and in some cases the soldier might be in the Indian Territory, or some other locality where the order of the court could not be had. The duty therefore devolved on the secretary of war to grant a discharge. There is nothing which can be construed as legalizing such enlistment. The next act I find is that of [February 13] 1862, c. 25, [12 Stat. 339,] which by the second section repeals the fifth section of the act of September 28. 1850. The repeal of this section leaves the law as it was before the act of 1850 was passed. The authority, which was by that section conferred on the secretary of war, was by its repeal simply withdrawn, and it did not in any way touch the validity of the enlistment, or the power of the court over it. I have no doubt that the enlistment is illegal as against the parent, being without his consent, and that the minor should be discharged therefrom. Vide act of [February 24] 1864, c. 13, [13 Stat. 6,] and [act of July 4. 1864,] c. 237, [13 Stat. 379,] and act of [March 3] 1865, [15 Stat. 487.]

Discharge ordered.

## ANDREWS, (The JAMES.)

[See The James Andrews, Case No. 7,189.]

## Case No. 370.

### In re ANDREWS et al.

[11 N. B. R. (1875.) 59; 22 Pittsb. Leg. J. 41.]

District Court, W. D. Pennsylvania.

BANKRUPTCY—COUNSEL'S FEES—PREPARATION OF SCHEDULE.

[The fee to be allowed counsel for the preparation of a schedule of a bankrupt is not to be determined by the amount of mere clerical labor performed; the systematizing, arrangement, and condensation of the matter should be considered; and a fee of $100 for preparing a schedule numbering 40 pages of bankruptcy blanks was properly allowed.]

In bankruptcy.

By the register: Noah W. Shafer, the register to whom was referred the petition of Ferguson & Murray, Esqs., attorneys-at-law and solicitors for said bankrupts, for a reasonable compensation for preparing and making the individual and partnership schedules of said bankrupts, beg leave to report: That I have very carefully examined the matters alleged in the said petition, and have compared and considered the amount of professional labor involved, and also what is a reasonable compensation for the same. It has been adjudi-

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

cated in your honorable court, that counsel in cases of this kind have the right to be compensated out of the funds of the bankrupt in the hands of the assignee, and the register accepts the adjudication as fixing the law and practice.

Then as to the amount of compensation. In examining the schedule I find that there are partnership schedules of Andrews & Jones, of Robert Andrews and Henry C. Jones, the individuals composing the said firm. The whole schedule numbers forty pages of bankruptcy blanks. exclusive of the blanks for jurats and certificates. The question of compensation of counsel fees in any given case is always difficult. It requires great care, experience, and caution to do justice to the solicitors and at the same time to preserve the estate from improper allowance. It is not the mere manual labor of writing that counsel, in cases of this kind, is required to do. He must first get his matter systematized, arranged, and condensed, so as to appear to as much advantage and convenience as is possible. This cannot be done with the celerity of mere copying, as all those who have tried it know. In a voluntary petition and schedules filed before me, or rather referred to me by your honorable court, not so large as this, not so many pages, nor any more difficult, the petitioner paid four hundred dollars for its preparation and the accompanying counsel and advice. I refer to the case of Stephen G. Barnes, [Case No. 1,010,] bankrupt, No. 2253 in bankruptcy. This, I have no hesitation in saying, is not to be taken as a fair precedent, for I am free to say that I think that a compensation entirely disproportionate to the work and professional skill required. In the case before me, and in view of the value that counsel put upon their own services (I mean counsel competent to perform the duties they undertake), the register does not think that one hundred dollars would be more than a reasonable compensation, but on the other hand, considers it reasonable—not too much, but at the same time ample for the services rendered. The professional labor required is much more than that required in an involuntary petition prior to the amendment of June 22, 1874, to the bankrupt law, in which cases, from seventy-five dollars to one hundred and twenty-five dollars have been allowed in my district. The assignee, A. W. Irwin, Esq., has funds of the said bankrupts in his hands, and whatever compensation is allowed, he has the funds to pay. The register would recommend that the petitioning counsel in this case be allowed the sum of one hundred dollars for the preparation of the schedules of bankrupt—both partnership and individual—the preparation of which was in obedience to the mandate of your honorable court, as contained in the warrant issued in the case, and further, that the assignee, A. W. Irwin, be directed to pay the same out of the funds of the estate in his hands. Respectfully submitted. N. W. Shafer.

McCANDLESS, District Judge. The foregoing report of register Shafer, recommending an allowance of one hundred dollars to Ferguson & Murray, Esqs., solicitors for said bankrupt, is confirmed, and the assignee is ordered to pay the same.

## ANDREWS v. BASSETT.

[See Andrews v. Spear. Case No. 379; Id. 380.]

## ANDREWS, (BROWNING v.)

[See Browning v. Andrews, Case No. 2,040.]

## Case No. 371.

### ANDREWS et al. v. CARMAN.

[13 Blatchf. 307; 2 Ban. & A. 277;[1] 9 O. G. 1011; Merw. Pat. Inv. 249.]

Circuit Court, E. D. New York. April 24, 1876.

PATENTS FOR INVENTIONS — VALIDITY OF REISSUE —PROCESS—NOVELTY — MANUFACTURE —ANTICIPATION—ABANDONMENT.

1. The reissued letters patent granted to Nelson W. Green, May 9th, 1871, for a process of constructing wells, are valid.

[Cited in Andrews v. Cross, 8 Fed. 277; Eames v. Andrews, 122 U. S. 47, 7 Sup. Ct. 1073. Followed in Green v. French. 11 Fed. 591: Andrews v. Eames, 15 Fed. 110; Green v. French, Case No. 5,757.]

2. The state of the art of constructing wells at the time Green made his invention, explained. The peculiar features of Green's well, called the "driven well," explained.

[Cited in Andrews v. Cross, 8 Fed. 277; Eames v. Andrews, 122 U. S. 47, 7 Sup. Ct. 1073. Followed in Andrews v. Eames, 15 Fed. 110; Green v. French, 11 Fed. 591.]

3. The claim of the patent, namely, "The process of constructing wells by driving or forcing an instrument into the ground until it is projected into the water, without removing the earth upwards, as it is in boring, substantially as herein described," is a claim to a process: and the element of novelty in the process consists in driving a tube tightly into the earth, without removing the earth upwards, to serve as a well pit, and attaching thereto a pump, so that the process puts to practical use the new principle of forcing the water in the water-bearing strata of the earth from the earth into a well pit, by the use of artificial power applied to create a vacuum in the water-bearing strata of the earth, and at the same time in the well pit.

[Cited in Green v. French, Case No. 5,757; Andrews v. Cross, 8 Fed. 277; Eames v. Andrews, 122 U. S. 47; 7 Sup. Ct. 1073. Followed in Green v. French, 11 Fed. 591; Andrews v. Eames, 15 Fed. 110.]

4. The claim may also well be construed as claiming the well as a manufacture constructed according to the process described.

[Cited in Andrews v. Cross, 8 Fed. 277; Eames v. Andrews, 122 U. S. 47, 7 Sup. Ct.

---

[1] [Reported by Hon. Samuel Blatchford. District Judge, reprinted in 2 Ban. & A. 277; and here republished by permission.]